IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


DAVID E. ROMERO,

       Plaintiff,

v.                                                   CIV 04-1328 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

## **MEMORANDUM OPINION AND ORDER**

      Plaintiff David Romero worked various jobs until 2002 with his last job as a trucker for an oil company, which he described as a sedentary job. He was fired from that position in April 2002. *E.g., Administrative Record* ("*Record*") at 48, 66. Romero has given three different explanations for his termination: (1) he was fired after a dispute "on a run ticket," *id.* at 52; (2) his uncontrolled high blood pressure caused memory lapses and a lack of concentration so he walked off the job, *id.* at 84, 267-68; and (3) he failed to pass a physical test, *id.* at 138-39. Despite Plaintiff's obesity and hypertension, four months after he was fired a doctor certified him fit for duty under the federal Motor Carrier Safety Regulations. Plaintiff has not worked since he was fired, however. *See id.* at 65, 112-16.

      Both Plaintiff and his wife filed for benefits in November 2002, and Plaintiff would later tell a consulting examining psychologist that his wife was granted benefits. *See id.* at 48-50, 138, 250-55. Administrative Law Judge ("ALJ") Gary L. Vanderhoof found that Plaintiff has the residual functional capacity to perform "simple and routine" light work that: does not involve

working with heights or balancing; only occasionally requires bending, crawling, squatting and climbing; does not require prolonged continuous walking; and allows a sit/stand option. *Id.* at 15. He secured testimony from a vocational expert and denied benefits at Step 5, finding Plaintiff could work as a machine operator, small parts assembler or gate tender. *Id.* at 16. The Appeals Council declined review on September 24, 2004, thereby rendering the ALJ's decision final. *See id.* at 1, 5-6.

This matter is before the Court on Plaintiff's motion to reverse or remand, where he asserts that the ALJ committed three categories of error. Within each category he raises several arguments directed to Plaintiff's physical impairments only. *See Docs. 8, 9.* I agree that the matter should be remanded.[1]

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *E.g., Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).[2] My review and decision, however, cannot be based on reweighing the evidence, or substituting my judgment for that of the agency, or making credibility determinations. *E.g., Langley,* 373 F.3d a 1118; *Hamlin,* 365 F.3d at 1214). Here, ALJ Vanderhoof's opinion is so conclusory and contradictory on the issues of

---

[1] Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 3, 5.*

[2] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214; *Doyal,* 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record of if there is a mere scintilla of evidence supporting it." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214.

credibility and residual functional capacity that this case does not present the "exceptional circumstances" where it would be suitable for a "harmless error" analysis based on my own review of the record.[3]

The relevant portions of ALJ Vanderhoof's very short opinion are as follows:

> The medical records show that claimant was followed at Santa An[a] Family Health. His blood pressure was 192/124 on July 6, 2002. He was given medication. Claimant also complained of chronic back pain and sleep apnea. Medical records indicate that claimant [is] obese. Claimant's medication was continually increased in an effort to control his blood pressure. ***The medical records, however suggest that claimant was not compliant with his medication regimen.*** Claimant would either not take his medication or allow his blood pressure medication to run out.
>
> [Review of medical records regarding mental condition].
>
> Holter monitor was noted to have been abnormal and claimant was referred to a cardiologist on September 2003. (Ex. 8F/32).
>
> A sleep study conducted on March 1, 2004, by Dr. Peter Guido. The claimant was noted to have a severe degree of obstructive sleep apnea, moderate oxyhemoglobin desaturation and severe disruptions of sleep architecture. With application of nasal CPAP therapy, sleep was somewhat improved at a setting of 12 cm, but no REM sleep was observed and overall sleep efficiency was poor so the titration was only partially complete (Ex. 9F/10).

---

[3] *See, e.g., Allen v. Barnhart,* 357 F.3d 1140, 1142 (10th Cir. 2004) ("we are empowered only to 'review the ALJ's decision for substantial evidence' and, accordingly, 'we are not in a position to draw factual conclusions on behalf of the ALJ.' . . . [T]o the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against *post hoc* justification of administrative action . . . . With these caveats, it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, *i.e.,* where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."); *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir. 2004) ("Claimant also correctly argues that the magistrate judge erred in upholding the Commissioner's decisions by supplying possible reasons for giving less weight to or rejecting the treating physician's opinion. The ALJ's decision should have been evaluated based solely on the reasons stated in the decision.").

> Claimant testified that he last work[ed] over a year ago. He was fired when he had a memory lapse and just walked off the job. He was noted to have very high blood pressure which causes him to have a decrease in concentration. He said that he has problems with his legs that prevent him from walking long distances. ***He was, however, able to drive to the hearing.*** He estimated the drive at about five miles. Claimant said that if he drives longer than that h[is] hands fall asleep.
>
> His medication causes him to feel like he has cotton in his mouth and h[e] nods off. He is in counseling every week and taking a computer class. Claimant said that he wants to get back to work. He is unable to help around the house because he can not walk for long periods of time and he drops things. He does, however, take out the trash.
>
> [Review of sequential analysis].
>
> The undersigned finds the claimant retains the following residual functional capacity to perform work requiring lifting 20 pounds occasionally and 10 pounds frequently with only occasional bending, crawling, squatting, climbing. Claimant could not climb ladders scaffolds or work at heights. Balancing should not be required in the job either. Work should be simple routine and repetitive in nature. He should have the option to sit or stand at will and there should be no prolonged continuous walking.
>
> The medical evidence support the finding that claimant's blood pressure is not controlled and it cause[s] him some decreased concentration and feelings of syncope. But the record shows that claimant also misses medication and runs out of medication. He testified that the medication he takes causes him to nod off but he also testified that he is taking a computer class and wants to get back to work. ***Claimant said that he does not drive much but he was noted to have driven file miles to the hearing.***
>
> [Then a short discussion about therapy and Romero's GAF score].

*Record* at 14-16.

      Portions of the opinion seem to suggest that the ALJ believed that Plaintiff's allegations of limitations were not entirely credible and/or that they were the result of failing to take his

4

medication.[4]  For instance, the recited residual functional capacity limitations seem to take Plaintiff's medical conditions into account, but they do not reflect Romero's asserted limitations. Yet, in paragraph four of his findings, the ALJ specifically concluded without any further elaboration that "claimant's allegations are credible." *Id.* at 16, ¶ 4.

If he in fact found Plaintiff's testimony credible, then ALJ Vanderhoof would have also found that Plaintiff:  has memory lapses when his blood pressure is too high, which occurs two to three times a week;  had a stroke in 1998 and the doctor who treated him had since passed away, *see id.* at 269;[5] can only walk 100 feet, and then has to stop and rest for five minutes; falls asleep if he sits down for thirty minutes, either as a result of medications or because Plaintiff does not sleep through the night; and, at most can lift a gallon of milk, but he cannot hold it or anything else (including a steering wheel) very long because his hands become numb. *See id.* at 268-73. If his "credibility" conclusion also encompassed Plaintiff's written allegations, *see id.* at 73-84, 91-99, 101, 109, then Plaintiff is also limited as follows: an inability to concentrate on a job, *e.g., id.* at 84; an inability to complete any task without frequent breaks, *e.g., id.* at 73; chest pains that

---

[4]  For example, Plaintiff's treating physician is Dr. Jacobo A. Rivero at the Santa Ana Family Health in Carlsbad, New Mexico.  There are duplicates of his records in the file.  I refer to the pages found in the latter set, which appears to be the complete one, though not necessarily in chronological order.  *See Record* at 118-36, 194-222. Dr. Rivero's records note instances where Plaintiff was noncompliant with his medications.  *See, e.g., id.* at 202-03 (Rivero record 9/27/02: Plaintiff only taking one medication, to "add back" another); *id.* at 214-15 (Rivero record 10/7/02; Plaintiff counseled on compliance with medications); *id.* at 212-13 (Rivero record 11/8/02; "doubtful" marked in section regarding compliance with therapy); *id.* at 200-01 (Rivero record 5/22/03; Plaintiff has been out of medications for 2-3 days).  When the consulting psychologist examined Plaintiff in July 2003, Plaintiff said he "takes all of his medications daily according to prescription."  *Id.* at 139.  But when the psychologist compared the dates of the prescriptions, number of pills prescribed, and "what was left in the bottles," he concluded that Plaintiff "is not compliant with his medication."  *Id.*  By November 2003, Dr. Rivero described Plaintiff's hypertension as "malignant" and in December 2003 referred Plaintiff for the sleep study.  *Id.* at 196-97.

[5]  There are no medical records of this event in the file.

are becoming more frequent, *id.* at 101; he tires quickly if he has to lift his ands above his shoulders, *id.* at 98; and he cannot feel small things in his right hand, *id.* at 99.

In addition, the opinion finds it particularly significant that Plaintiff could drive to the hearing and expressly cites Dr. Guido's sleep study. However, the ALJ fails to mention that Dr. Guido told Plaintiff's treating physician that "Mr. Romero has been advised to be very cautious with driving or any other activities where sleepiness might be hazardous." *Id.* at 241. Nor does the ALJ's opinion mention that Plaintiff indicated to Dr. Guido that he "had a stroke or a minor heart attack about a year ago [or in 2003], which was accompanied by some numbness to the left side of his face." *Id.* at 243.[6]

Furthermore, there is no indication in the opinion that ALJ Vanderhoof considered and applied the correct legal standards concerning obesity. For example:

> 8. How Do We Evaluate Obesity in Assessing Residual Functional Capacity in Adults . . .?
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. . . .
>
> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity ***within the work environment.*** Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ('Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims'), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. ***A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. . . . In cases involving obesity, fatigue may affect***

---

[6] There are no records of this event, either, and Dr. Rivero's notes throughout 2003 do not mention a stroke either.

> ***the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.***

*Social Security Ruling 02-1P,* 2000 WL 628049 at *6 (9/12/02). The ALJ's opinion does not mention this Ruling or discuss how Plaintiff's obesity, and accompanying sleep apnea, affect his functioning.

Thus, it appears that Romero's alleged limitations are inconsistent both with his residual functional capacity finding and with the jobs identified by the vocational expert. Indeed, the vocational expert testified that if sleep apnea caused Plaintiff to fall asleep spontaneously at least once a day, he would be "unemployable." *Record* at 287. Again, because the opinion fails to address how the sleep apnea impacts Romero's functioning in the work environment, this alone is grounds for remand. The other deficiencies identified above compound the reason to do so.

I suspect that ALJ Vanderhoof may have "credited" Plaintiff because: there was no consulting exam concerning Plaintiff's physical limitations; the medical records other than the sleep apnea report above do not mention any limitations; and Plaintiff was not referred to a cardiologist until late in the proceedings but the cardiologist's results are not of record.[7] Notwithstanding counsel's failure to request a consultation, this may be a case where the need for a consultative examination is "clearly established." *See Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997). In light of the necessity for a remand on the above grounds, however, I need not address this or the other issues raised by Plaintiff at this time. *See Doc. 9.*

---

[7] Dr. Rivero uses a pre-printed forms for his notes. Those forms do have a section for "return to work/school in ___ days/weeks" and a space for other notes. *E.g., Record* at 205. The "lower extremity problem" form has a section specifically entitled "work restriction." *E.g., id.* at 207. Dr. Rivero did not make any marks in these sections, nor did he note any limitations or restrictions on Plaintiff's functioning elsewhere on the forms.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 8)* is GRANTED, and the matter is remanded to the Commissioner for further proceedings. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.